# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information of the cellular telephone assigned<br>call number 414-499-6755 | )<br>)<br>) Case No. 20-955M(NJ)<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the __Eastern__ District of __Wisconsin__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    x evidence of a crime;

    ❏ contraband, fruits of crime, or other items illegally possessed;

    ❏ property designed for use, intended for use, or used in committing a crime;

    ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841 and 846 | See Attached Affidavit |

The application is based on these facts:
See Attached Affidavit

    ❏ Continued on the attached sheet.

    ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*SA Scott Marlow*
Applicant's signature

Scott Marlow, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 4/29/2020

*Nancy Joseph*
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph
*Printed name and title*

| | **Return** | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>_____<br>*Executing officer's signature*<br><br>_____<br>*Printed name and title* |

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANTS

I, Special Agent Scott Marlow, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(414) 499-6755 ("Target Cell Phone #1")** and cellular telephone assigned call number **(414) 745-1219 ("Target Cell Phone #2)**, whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas. The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006. My duties include the investigation of drug trafficking organizations and violations of federal narcotics and money laundering

laws, including, but not limited to offenses defined by 21 U.S.C. § 841, 843, and 846, and 18 U.S.C. § 1956. Prior to my current assignment, I was employed as a police officer with the City of West Allis, a suburb of Milwaukee, Wisconsin for approximately nine (9) years. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, forgeries, including cellular telephones and other electronic telecommunication devices. I have had formal training in the investigation of drug trafficking; I have worked with numerous informants in the investigation of drug trafficking; and I have participated in the execution of numerous search warrants in which controlled substances, firearms, drug paraphernalia, and counterfeit monies were seized.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Throughout this affidavit, reference will be made to case agents or officers. Case agents

or officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

6.     Based on my training and experience, I know that a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals.  These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones.  A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that Tykel D. Spears, , has violated, and is continuing to violate, Title 21, United States Code, Sections 841 and 846.  There is also probable cause to believe that the devices described in Attachment A containg the information described in Attachment B, which will constitute evidence of these criminal offenses and will lead to the identification of other individuals who are engaged in the commission of these offenses.

3

## PROBABLE CAUSE

### A. Background

8. On August 19, 2019, the Milwaukee Police Department investigated a double shooting that occurred in the area of North 53rd Street and West Meinecke Street, in Milwaukee, Wisconsin. During that investigation, Milwaukee Police Officers located a motor vehicle in front of 2442 North 54th Street, Milwaukee, WI, that was struck by gunfire. Pursuant to that investigation officers went to 2429 North 53rd Street, and spoke with a witness of the incident, who stated they heard 2 gunshots prior to the incident and heard a male shout "get the fuck out." The witness stated that s/he looked out the window of his/her residence and saw a black male armed with a gun run into 2442 North 53rd Street, Milwaukee, WI.

9. Officers went to 2442 North 53rd Street, and interviewed Tammy Spears, who stated she lives at the residence with her (2) sons and daughter. One of the sons was identified as Tykel D. Spears. Tammy Spears informed officers that Tykel Spears was not home at the time. She gave officers written consent to search the residence.

10. During a search of the basement officers located an unknown white substance wrapped in plastic under a couch cushion and an unknown white substance wrapped in plastic inside a black backpack. Officers also located a black digital scale, red digital scale, plastic baggies, glass plate with a unknown white powdery substance, and a hydraulic press. The unknown white substances was later field tested positive for the presence of fentanyl, with a total weight of 74.09 grams.

4

11. Tammy Spears denied knowledge of the fentanyl and identified Tykel Spears as using the basement to play video games. While officers were on scene, Tykel Spears arrived at home and was arrested.

12. On August 20, 2019, Milwaukee Police Department Officers interviewed Tykel Spears. After being advised of and waiving his right, Spears confessed to possessing the fentanyl recovered from the basement and confessed to selling drugs. Tykel Spears stated he made $175,000 per year selling drugs.

**B. March 2020**

13. Within the past three weeks, Affiant interviewed a confidential source (CS #1) who identified Tykel Spears as a large scale heroin and fentanyl dealer. For several reasons, Affiant believe that CS #1 is reliable and credible. First, CS #1 has been provided information that Affiant was able to corroborate through law enforcement soucrces. Second, the information CS #1 has provided information against CS #1's penal interest. Third, the information provided by CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information has been corroborated through independent investigation, including information from other sources. Fourth, CS#1's information is based on firsthand observations. CS #1 has a prior convicton for Felon Possess Firearm, Criminal Damage to Property, and Receiving Stolen. CS#1 is providing information to law enforcement for financial compensation.

5

14. CS #1 stated that Spears's "dope (drug) line" is **(414) 499-6755 (the "Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)** is Spears' "personal line." CS #1 stated that s/he has purchased heroin from Tykel Spears hundres of times and has observed Spears in possession of large quantities of heroin on multiple occasions in the past. CS #1 stated that he/she has also contacted Spears numerous times at **(414) 745-1219 ("Target Cell Phone #2)** to purchase heroin. Affiant knows that CS # 1 has provided other law enforcement officers with information regarding Tykel Spears. Affiant knows that CS #1 correctly identified Tykel Spears' home address and as well as Spears' mother's home address. This information was corroborated via law enforcement sources.

15. On March 1, 2020, an administrative subpoena was issued to Sprint for **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)**. The subscriber information provided by Sprint for **(414) 499-6755 ("Target Cell Phone #1")** lists the subscriber as Jhon Doe, P.O. Box 15955, Lenexa, KS 66285 that was activated on December 3, 2018. Case agents area aware that this is a ficticious mailing address. The subscriber information provided by Sprint for **(414) 745-1219 ("Target Cell Phone #2)** lists the subscriber as Tykel Spears, 2478 N. 45 St, Milwaukee, WI that was activated on January 12, 2018. An analysis of tolls for **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)** revealed that both cellular telephones are in contact with over thirty common contacts. Therefore, based on their training and experience, and the investigation to date, case agents believe that Spears is the user of

6

both **(414) 499-6755 ( "Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2).**

16. On March 16, 2020, the Honorable Nancy Joseph, U.S. Margistrate Judge of the Eastern District of Wisconsin, reviewed and approved an affidavit to obtain the location information for **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)**, for a period of forty-five days. On the same date, the warrant was served to Sprint and investigators began receiving information for **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)**. The warrants for the location information for **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)** expire on April 29, 2020.

17. While monitoring the information of **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)**, case agents identified two additional residences that Spears uses to store controlled substances and conduct drug trafficking activities.

**C. April 2020**

18. Within the past month, case agents interviewed a confidential source (CS #2) who stated s/he had information about Tykel Spears, who CS # 2 identified as a large scale heroin and fentanyl dealer. CS #2 has observed Spears in possession of large quantities of heroin on multiple occasions in the past. CS #2 also stated that s/he has been inside 2465 N. 37 St, Milwaukee, WI within the last sixty (60) days. While inside the

residence, CS #2 has observed narcotics packaging materials, a digital scale, and a narcotics press.

19.     For several reasons, case agents believe that CS #2 is reliable and credible. First, CS #2 has been provided information that case agents were able to corroborate through law enforcement sources.  Second, the information CS #2 has provided information against CS #2's penal interest.  Third, the information provided by CS #2 is consistent with evidence obtained elsewhere in this investigation where CS #2 was not utilized, and substantial portions of CS #2's information has been corroborated through independent investigation, including information from other sources.   Fourth, CS#2's information is based on firsthand observations.  CS #2 has a prior conviction for Possession of  Cocaine with Intent to Distribute.  CS #2 was arrested in 2019 for Possession with Intent to Distribute Heroin and Bail Jumping. CS#2 is providing information to law enforcement for judicial consideration.

20.     Within the past month, investigators interviewed a confidential source (CS #3) who stated s/he had information about Tykel Spears, who CS #3 identified as a heroin and fentanyl dealer.  CS #3 has purchased heroin and fentanyl from Spears on hundreds of occasions in the past several years. CS #3 stated that s/he contacts Spears on telephone number (**414) 499-6755 ("Target Cell Phone #1")**.  For several reasons, case agents believe that CS #3 is reliable and credible. First, CS #3 has been provided information that case agents were able to corroborate through law enforcement sources. Second, the information CS #3 has provided information is against CS #3's penal interest.

8

Third, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial portions of CS #3's information has been corroborated through independent investigation, including information from other sources. Fourth, CS#3's information is based on firsthand observations. CS #3 does not have a criminal history. CS #3 is providing information to law enforcement for judicial consideration.

21. During the week of April 13, 2020, investigators utilized CS #3 to conduct a controlled purchase of fentanyl from Spears. Prior to the purchase case agents established surveillance of 2465 N. 37 St, Milwaukee, WI. Case agents met with CS #3, who stated that s/he made telephone contact with Spears on telephone#**(414) 499-6755 ("Target Cell Phone #1")**, who instructed CS #3 to travel to the area of 37th and Wright, Milwaukee, WI. Case agents confirmed that CS #3 did in fact contact Spears on telephone# **(414) 499-6755 ("Target Cell Phone #1")** by reviewing CS#3's telephone.

22. Prior to the controlled buy, case agents searched CS #3 and CS #3's vehicle for contraband, rendering negative results. CS #3 was given pre-recorded currency and a video monitoring / recording device. Investigators followed CS #3 to the area of 37th and Wright, where investigators observed Spears exit 2465 N. 37 St, Milwaukee, WI walk to CS#3's vehicle and met with CS#3 for a short period of time. Case agents then observed Spears return to the residence and enter through the front door.

23. Case agents then followed CS #3, and seized approximately one gram of a substance, that later tested positive for fentanyl. CS #3 and his/her vehicle were searched

9

for contraband, rendering negative results. CS #3 confirmed that Spears met him/her and gave CS#3 the narcotics in exchange for the currency provided by investigators.

### D. Conclusion

24. A recent analysis of tolls for **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)** revealed that both cellular telephones are in contact with over thirty common contacts. Therefore, based on their training and experience, and the investigation to date, case agents believe that Spears is the user of both **(414) 499-6755 ( "Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2).**

25. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that Tykel Spears is engaging in the trafficking and distribution of heroin and fentanyl and is utilizing **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)** to further these crimes. Affiant further submits that probable cause exists to believe that obtaining the location information of **(414) 499-6755 ("Target Cell Phone #1")** and **(414) 745-1219 ("Target Cell Phone #2)** will assist case agents in determining Tykel Spears' other customers, co-conspirators, sources of supply, and help to identify stash houses.

10

Case 2:20-mj-00955-NJ   Filed 04/29/20   Page 12 of 19   Document 1

26. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

11

28. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

12

31. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint for a time period of 45 days from the date the warrant is signed. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

32. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **(414) 499-6755 ("Target Cell Phone #1"),** whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas.

2. The cellular telephone assigned call number **(414) 745-1219 ("Target Cell Phone #2)**, whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas.

3. Information about the location of the Target Cell Phones that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **(414) 499-6755 ("Target Cell Phone #1"),** whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas.

2. The cellular telephone assigned call number **(414) 745-1219 ("Target Cell Phone #2)**, whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas.

3. Information about the location of the Target Cell Phones that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phones" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).